IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| PHILIP DEVON,               ) | |
|                 ) | **Case No. 13 CV 3189** |
|       **Plaintiff,**   ) | |
|                 ) | **JUDGE GETTLEMAN** |
|    **vs.**             ) | |
|                 ) | |
| **CHICAGO POLICE LIEUTENANT RANDALL**  ) | |
| **DARLIN, STAR #, CHICAGO POLICE OFFICER**  ) | |
| **MIREYA LIPSEY STAR #17080, and the CITY**  ) | |
| **OF CHICAGO,**          ) | |
|                 ) | |
|       **Defendants.**   ) | |

**SCHEDULE 2(j)**
**Brief Summary of Intended Motions *in Limine***

Plaintiff has filed the following Motions *in Limine*:

## MOTIONS IN LIMINE

NOW COMES the Plaintiff PHILIP DEVON by his attorneys, Melinda Power of

West Town Law Office and Julia Bartmes of Conklin and Conklin LLC, and moves that

this court grants his Motions *in Limine* on the following grounds:

## 1. MOTION TO EXCLUDE WITNESSES

Plaintiff makes a motion to exclude any witnesses who will or may be called to

testify at his trial.

**Defendants' Response**:

## 2.  MOTION TO ALLOW PLAINTIFF TO CALL PARTY AND NON-PARTY CITY POLICE OFFICERS AS ADVERSE WITNESSES

Plaintiff intends to call police officers listed in the Pre-Trial Order.  He plans to call both Defendants and police officer witnesses.  Under Federal Rule of Evidence 611(c), leading questions may be used on direct examination of a "witness identified with an adverse party."   When the City is a Defendant to a §1983 claim, police officers employed by the city and who were present during portions of the incident at issue are "clearly qualified as a 'witness identified with an adverse party.'" *Ellis v. City of Chicago*, 667 F. 2d 606, 612-13 (7th Cir. 1981); *See also, Ratliff v. City of Chicago*, 10 C 739, Judge Dow, Dkt. 115, 2012 WL 5845551 (N. D. Ill. Nov. 19, 1012); *Favila v. City of Chicago*, 09 C 3265, Judge Shadur, Dkt. 111 2011 WL 2160882 (N.D. Ill. June 1, 2011).

The Plaintiff intends to call police officer witnesses listed by him in his 26(a)s, Officer Pettis and possibly Lt. Konow.  The Plaintiff has deposed them.  They were present at the police station where the Plaintiff was processed. The Plaintiff requests that he be allowed to call the Defendant and Chicago police witnesses as adverse witnesses and pose leading questions to them.

**Defendants' Response**:


## 3. MOTION TO EXCLUDE EVIDENCE OF DEFENDANTS' AWARDS OR COMMENDATIONS AND THE WEARING OF MEDALS OR RIBBONS OF OFFICE

Plaintiff requests that any evidence of awards or commendations received by the

Defendants be excluded and that the Defendants not be permitted to wear medals or ribbons of office that they have received as a police officer during the trial.

The Defendants may have received awards and commendations regarding their behavior. Additionally, the Defendants have likely received medals and ribbons in acknowledgment of their service for the Chicago Police Department.

Evidence that the Defendants have received awards, commendations, medals and ribbons is not relevant to any issue to be decided by the jury in this case, and thus is not admissible. Fed. R. Evid. 401, 402.

Moreover, even if such awards, commendations or other positive notations are deemed to have some probative value, this value is substantially outweighed by the danger of unfair prejudice and confusion of the jury, since Defendants could seek to use them to unjustly add to the credibility of the Defendants.[1] Thus, any awards and commendation should be excluded under Fed. R. Evid. 403. *Sughayyer v. City of Chicago*, 09 C 4350, Judge Finnegan, Dkt. 107, 2011 WL 2200366 (N. D. Ill. June 6, 2011); *Tolliver v. Gonzalez*, 10 C 1879, Judge Shadur, Dkt. 44, 2011 WL 5169428 (N.D. Ill. Oct. 31, 2011); *White v. Gerardot*, 1:05CV-382, 2008 WL 4372019 (N.D. Ind. Sept. 23, 2008).

Additionally, permitting Defendants to be present and to testify in Court wearing medals or ribbons, or to testify regarding awards and commendations, would constitute character evidence which is generally inadmissible pursuant to Fed. R. Evid. R. 404 (a). *Graham v. Bennett*, 04 C 2136, 2007 WL 781763, (C.D. Ill Mar. 12, 2007) ("Evidence of prior commendations could serve the improper function of providing

---

[1] Plaintiffs do not object to Defendants wearing insignia indicating their rank.

evidence of action in conformity with Defendant's prior good performance on the police force.").

**Defendants' Response**:

## 4. MOTION TO BAR THE DEFENDANTS FROM REFERRING TO THE COMPLAINT IN THIS MATTER

The Plaintiff seeks to bar the Defendants from using Plaintiff's unverified complaint as evidence or to impeach Plaintiff at trial. Plaintiff contends that because the complaint is an unsworn statement prepared by counsel, it cannot be used for impeachment purposes. Since the allegations contained in Plaintiff's complaint were not made under oath, they may not be used as prior statements of the Plaintiff to impeach him. *See, Bolden v. Ramos*, No. 93 C. 3416, Judge Castillo, Dkt. 104, *4, 1996 WL 66135 February. 13, 1996 and Federal Rules of Evidence 402, 403 and 404.

**Defendants' Response**:

## 5. MOTION TO PRECLUDE THE DEFENDANTS FROM USING IMPROPER BACKGROUND CHECKS ON JURORS

The Defendants' attorneys have access to certain databases, including CLEAR (Citizen Law Enforcement and Reporting), which allow them to check on the criminal background of jurors or potential jurors. Plaintiff's attorneys do not have access to CLEAR or LEADS (Law Enforcement Agencies Data System) upon which background checks can also be done. *See, e.g.* 20 Ill. Adm. Code 1240.50 and 1240.80 (LEADS information is restricted and no personal use is allowed).

The Plaintiff's attorneys are aware that in other cases, including after a jury has been empanelled, attorneys representing the City of Chicago have used either the City of Chicago-owned CLEAR database, or possibly other databases, to obtain information about jurors. *Anderson v. City of Chicago,* 09 C 2311, Judge St. Eve, Dkt. 136, 2011 WL 2292327 June 9, 2011; *Williams v. City of Chicago*, 08 C 6409, Judge Lefkow, Dkt. 152, March 24, 2012 *Hill v. City of Chicago*, 06 C 6772, Judge St. Eve, Dkt. 542, 2011 WL 2550623, June 27, 2011 (all background checks by the Defendants banned).

When the Defendants' review of the database indicates that a juror has either been arrested or convicted and that juror denied being arrested or convicted during *voir dire*, the Defendants' attorneys can, if and when they so desire, use this information to get rid of jurors who appear to be favorable to the Plaintiff's version of events.

If the Defendants have this information, they can then decide to wait until sometime during the course of the trial to bring to the Court's attention the inaccuracy between what the juror testified to during *voir dire* and the information in his possession.

Alternatively, if the Defendants obtain information which indicates that a juror who they believe is favorable to them was not honest during the *voir dire*, they are under no obligation to disclose that information to the Plaintiff.

There are various problems with this use of information to which the Plaintiff has no access. Access to this information gives an unfair advantage to the Defendants. Instead of challenging the prospective juror during *voir dire* and allowing the Plaintiff to be aware of the issue, the Defendants can "spring" this information if and when it is convenient to them.  Additionally, if the Plaintiff had known that a particular juror would be excused either for cause or challenged by the Defendants, the Plaintiff may have used

his peremptory challenges differently.

Thus, the Plaintiff requests that any improper background checks on jurors be precluded, or that the Defendants be compelled to share any information obtained with the Plaintiff as soon as it is obtained.

**Defendants' Response**:


## 6. MOTION TO PRECLUDE THE DEFENDANTS FROM INTRODUCING EVIDENCE OR ARGUING THAT THE DEFENDANT IS UNABLE TO PAY PUNITIVE DAMAGES

If Defendants make their financial condition an issue in this case by defending the punitive damages claim with a claim of financial hardship, then they open the door to evidence, a jury instruction, and argument that Defendant Officers will be indemnified by the City of Chicago for compensatory damages. "If defendants open the door by introducing evidence that they are personally responsible for punitive damages, judges in this district generally permit plaintiffs to inform the jury that defendants will be indemnified for compensatory damages." *Hillard v. City of Chicago, Ill.*, 09 C 2017, Judge Conlon, Dkt. 63, 2010 WL 1664941, April 23, 2010); *Betts v. City of Chicago, Judge Gotschall,* 748 F. Supp. 2d 1020, 1031, ("[I]f the defendants plead poverty as to any damages, [Plaintiff] may offer evidence of indemnification"); *Delgado v. Mak*, 06 C 3757, Judge Dow, 2008 WL 4367458, *4, March 31, 2008; *Galvan v. Norberg*, 04 C 4003, 2006, Judge Shadur,  WL 1343680, *2, May 5, 2006 ("[D]defense counsel should be aware that if they plan to apprise the jury of the fact that the individual officers will have to bear [punitive] damages out of their own pockets, fairness would require that the

jury also be informed of the true situation (indemnification) as to compensatory damages"); *Regalado v. City of Chicago*, 96 C 3634, Judge Shadur, 1998 WL 919712, *1 December 30, 1998.

If Defendants claim financial hardship in defense to a claim for punitive damages, then the jury should be informed through evidence, jury instruction, and argument that Defendants will be indemnified for compensatory damages. *Kemezy v. Peters* 79 F.3d 33, 37 (7th Cir. 1996).

It is improper to allow Defendants to "plead poverty if he will be indemnified." *Id.* While the general rule is that evidence of indemnification should be excluded because it may encourage a jury to inflate its damages award because it knows the government, not the individual defendant, is footing the bill, the rationale for applying the general rule dissolves once defendant makes his financial circumstances an issue by his testimony or other evidence in the damages phase of the trial. At that point, their direct testimony "opens the door" and Plaintiff should be permitted to cite and rely upon the state's indemnification statute. *Lawson v. Trowbridge,* 153 F.3d 368, 379 (7th Cir. 1998).

**Defendants' Response**:

# 7.  MOTION TO EXCLUDE SPECULATION AS TO WHY THE DEFENDANTS MIGHT HAVE ARRESTED THE PLAINTIFF

Speculative testimony regarding the various reasons why a police officer *might* arrest a citizen could include some dangerous and inflammatory situations which do not relate to Plaintiff's situation, and would be extremely prejudicial to the Plaintiff. *See,* Fed. R. Evid. 402, 403. The reasonableness of an arrest turns on what the officer *actually*

*knew* at the time of the arrest, not what they might have known, should have known, or found out later. See e.g., *Carmichael v. Village of Palatine, Illinois,* 605 F.3d 451 (7th Cir. 2010). Defense counsel should not be allowed to improperly garner sympathy for police having a dangerous job by presenting irrelevant facts that are prejudicial to Plaintiff. Defense counsel should not be allowed to plant seeds of doubt in the jury's mind as to what really happened the day Plaintiff was arrested by Defendant officers, by making up scenarios for which there <u>is no evidence or substantiation.</u> Speculative evidence of what might have happened is not relevant and it would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 402, 403.

**Defendants' Response**:


## 8. MOTION TO EXCLUDE ANY REFERENCE TO HOW THE PLAINTIFF RETAINED HIS ATTORNEYS

During his deposition, the Defendants' Counsel inquired of the Plaintiff how he retained the services of his attorneys. This is irrelevant to any issue in this case. Any reference to the process by which Plaintiff's attorneys were retained should be barred. *More v. City of Braidwood*, 08 C 5203, 2010 WL 3547964 (N.D. Ill. Sept. 7, 2010).

Additionally, the Defendants' Counsel asked questions concerning how he knew how to get an attorney. This is irrelevant to any issue in this case. The Plaintiff <u>also</u> testified that he was represented by a National Lawyers Guild attorney after an arrest during the Occupy Chicago demonstrations and after he was arrested on May 19, 2012. The National Lawyers Guild is not relevant to any issue in this case.

**Defendants' Response**:

## 9.  MOTION TO BAR THE DEFENDANTS FROM PORTRAYING THE POLICE AS HEROES OR TO EITHER GLAMORIZE OR DRAMATIZE THEIR WORK

It is possible that the Defendants or their witnesses may attempt to distract the jury from the facts of this case by portraying the police work they do as fraught with danger requiring significant risks.  They may attempt to testify and state or insinuate that they should be able to "cut corners" in their attempt to stop crime.  They may attempt to portray their work in a way that will garner sympathy from the jury.  None of this is relevant, yet it is extremely prejudicial to the Plaintiff.  The issues before the jury are: whether the Defendants had probable cause to arrest the Plaintiff; whether the Defendants used excessive force; and whether the Defendants maliciously prosecuted the Plaintiff. The Plaintiff requests that the Defendants and their witnesses be ordered to stick to the facts of this case and refrain from making extraneous comments about the nature of their employment.  As examples, the Plaintiff requests that the Defendant and his witnesses do not make statements such as:

- Police officers do not falsely arrest people for no reason;

- Police officers do not maliciously prosecute people for no reason;

- Police officers do not use excessive force against people for no reason;

- Police officers are heroes;

- Police officers risk their lives every day;

- Police officers serve and protect you;

- Police officers get up every morning to face dangerous situations/fight criminals/protect us and

-Police officers would never risk their careers by doing what Plaintiff alleges.

This is not an all-inclusive list of testimony that the Plaintiff requests the Defendants and their witnesses be ordered not to make. However, it is an example of testimony whose only purpose is to prejudice the jury in favor of the Defendants and should not be admitted. *Montanez v. Fico,* 10 C 4708, 2012 WL 2062562, June 6, 2012.

**Defendants' Response**:


## 10. MOTION TO BAR REFERENCES TO CIVIL DISOBEDIENCE

The Defendants may attempt to portray the events of May 19, 2012 as "civil disobedience". However, not one single witness has testified that any civil disobedience was contemplated, planned or done on May 19, 2012. The Defendants have not testified that Plaintiff engaged in civil disobedience. There is no evidence whatsoever upon which the Defendants could rely to refer to civil disobedience or attempt to characterize the Plaintiff's arrest as an act of civil disobedience.

Additionally, civil disobedience is a term that has many meanings to many people. Upon hearing the term civil disobedience, some people may think of Dr. Martin Luther King, the actions at the World Trade Organization's gathering in Seattle in 1999 or the mass anti-Iraq war demonstration in Chicago on March 20, 2003. Without an explanation of what is meant by "civil disobedience", the use of that term can create confusion.

There is no evidence whatsoever to establish that any civil disobedience occurred on May 19, 2012 by Plaintiff and it is not relevant to any issue in this case. The Plaintiff asks that the term "civil disobedience" or similar terms and concepts not be used by the Defendants in this case.

**Defendants' Response**:


## 11. MOTION TO BAR REFERENCES TO OTHER DEMONSTRATIONS ATTENDED BY THE PLAINTIFF

The Plaintiff is a person who is motivated to help other people and strives to end injustice. He works at a social service agency which helps tenants, and he is going to law school to become a public service lawyer. To that end, he attended anti-NATO demonstrations as a photo journalist, as well as attending demonstrations on other issues, including the rights of tenants, in support of teachers and opposing the use of torture. Additionally, he attended and was arrested at one of the Occupy Chicago demonstrations. In relation to that demonstration, he testified that he knew arrests might be possible since people attending an Occupy Chicago rally the week before his arrest had been arrested.

He also testified that he participated in at least one other demonstration during the week of May 15th, 2012 as a photo journalist. None of these protests has any relevance to any issue in this case. In fact, he has the First Amendment right to peacefully and lawfully express his opinion on these issues and to take photographs of the demonstrations. However, there is disagreement and controversy regarding many of the political issues about which the Plaintiff protests. If the Defendants are able to inquire as to other types of protests in which the Plaintiff is or has been engaged, it is possible that

some, or all, of the issues the Plaintiff protests about will prejudice the jury against the Plaintiff.

Additionally, the Defendants may attempt to portray the Plaintiff as a person who is a professional protestor or a person who spends his time protesting. This is not accurate and will mislead and possibly prejudice the jury against the Plaintiff.

The political beliefs and actions of the Plaintiff are not on trial. Rather, this trial concerns the allegations of false arrest, excessive force and malicious prosecution. The prejudicial impact of admitting evidence of the Plaintiff's participation in other protests far outweighs any probative value.

**Defendants' Response**:


## 12. MOTION TO PRECLUDE THE CITY FROM COMMENT ON THE PLAINTIFF'S FAILURE TO CALL WITNESSES OR PRODUCE EVIDENCE

The Plaintiff is calling one civilian witness to discuss his damages, Paulina Janczuk. He is not calling as witnesses other people at the protest, because either he didn't know other people who were present at the protest or those he did know did not see him during the crucial time period leading up to his arrest.

**Defendants' Response:**


## 13. MOTION TO BAR REFERENCES THAT CHARACTERIZE THE DEMONSTRATION AS A RIOT or RELATED TERMS

During their deposition testimony, Defendants at times referred to the anti-NATO demonstration as a riot or used words to that effect. This is both a mischaracterization of the overwhelmingly peaceful nature of the demonstration and highly prejudicial.

The issues in this case do not concern the nature of the demonstration overall or the Defendants' characterization of it. The issues concern the allegations that Defendants falsely arrested the Plaintiff, used excessive force against him and maliciously prosecuted him. The Plaintiff asks that any descriptions of the demonstration as a riot, out-of-control, chaotic, unruly or similar words and concepts not be testified to by the Defendants or any witnesses.

**Defendants' Response:**


## 14. MOTION TO BAR REFERENCES TO BLACK BLOC, ANARCHISTS, TERRORISTS OR ANY CHARACTERIZATIONS AS TO THE DEMONSTRATORS

During the course of the anti-NATO demonstrations, including the demonstration on May 19, 2012, there were references to the "Black Bloc", "anarchists" and "terrorism". There are no allegations that the Plaintiff was participating in the "Black Bloc", or had anything to do with anarchism or terrorism. Once again, these issues have nothing to do with the issues in this case. There is no need for any testimony regarding these terms or concepts. There is no evidence, nor has there even been a suggestion by the Defendants, that the Plaintiff was part of these formations or groups, or that he shares these ideologies. These are highly inflammatory terms, and to introduce such loaded terms into the trial could very well prejudice the jury unfavorably against the Plaintiff and

13

cause those to decide this case based not on the issues, but on prejudice against formations, groups or concepts that are irrelevant to this case.

Additionally, five people were arrested and charged with terrorism related charges during the anti-NATO protests. The five people had nothing to do with the Plaintiff's case and there is no reason to have any testimony about them, their charges or their cases.

The Plaintiff requests that there be no testimony concerning "anarchism", "Black Bloc", "terrorism" or arrests during the anti-NATO protests of people charged with terrorism.

**Defendants' Response:**

## 15. MOTION TO BAR MENTION OF PERMITS

Unlike the *Vodak v. City of Chicago* case arising out of the March 20, 2003 demonstration, there is no issue in this case concerning permits. However, it is possible that Defendants, or police witnesses Sgt. Pettis or Lt. Konow, may try to raise this issue to obfuscate the real issues of false arrest, excessive force and malicious prosecution. The Plaintiff requests that there be no testimony regarding permits during this trial.

**Defendants' Response:**

## 16. MOTION TO BAR ANY TESTIMONY THAT ELICITS SYMPATHY FOR THE POLICE BASED ON THEIR POSITION

Any comment or argument in opening or closing or attempt to elicit testimony to inspire passion or compassion in favor of Defendants based upon their position as police officers would be highly prejudicial and not probative of any issue in this case. This case

is supposed to be decided based upon the evidence presented and reasonable inferences therefrom. Nobody checks their emotions at the door, but attempts to infuse pro-police hyperbole into the trial and to inflame passion among jurors in favor of law enforcement officers must be constrained in order to keep the parties on a level field. The Plaintiff requests that emotional remarks or testimony concerning the difficult job the police have not be permitted.

**Defendants' Response:**

## 17. MOTION TO BAR TESTIMONY BY DEFENDANTS THAT THEY "BELIEVED" THEY HAD PROBABLE CAUSE TO ARREST

Any testimony that Defendants "believed" they had probable cause to arrest the Plaintiff should not be allowed. In a damages suit, if there is room for difference of opinion concerning facts or reasonable inferences to be drawn from them, then the issue of probable cause is a proper issue for the jury. *Chelios v. Heavener,* 520 F.3d 678, 686 (7th Cir. 2008); *Maxwell v. City of Indianapolis,* 998 F.2d 431, 434 (1993).

Furthermore, the issue for the jury is an objective one not to be determined by the subjective belief of the officer. *See Terry v. Ohio*, 392 U.S. 1, 21 (1967) ("it is imperative that the facts be judged against an objective standard"). It is anticipated that the Defendants will attempt to proffer an opinion in their testimony that they had reasonable probable cause to arrest the Plaintiff. The Plaintiff objects to this. The issue of probable cause is an ultimate issue for the jury to decide based on the facts of the arrest, not based on the opinion of the officer. While the Defendants may testify as to the *facts of what happened* on May 20, 2012, they should not be permitted to proffer that they believed

15

they had probable cause to arrest the Plaintiff.  That would be usurping the role of the jury, who will be instructed on the definition of probable cause.

**Defendants' Response:**

## 18.  MOTION TO BAR REFERENCES TO FILING COMPLAINTS OR NOTIFYING THE INDEPENDENT POLICE REVIEW AUTHORITY (IPRA) OR THE STATE'S ATTORNEY'S OFFICE OF COOK COUNTY (SAOCC)

It is possible that the Defendants may try to elicit testimony regarding whether the Plaintiff filed a complaint regarding his treatment during the anti-NATO protest, his arrest and his physical injuries with either IPRA or SAOCC.  The Defendants may attempt to portray the Plaintiff's failure to do so as evidence that he wasn't falsely arrested, physically abused or maliciously prosecuted.  It may be unfairly used  to argue that the Plaintiff fabricated the claim or did not go through proper authorities to seek redress for his claim.  However, the failure of the Plaintiff to file a complaint is irrelevant to any issue in this case, and will serve only to confuse the jury. The Plaintiff requests that any testimony concerning the filing of complaints with IPRA, SAOCC or any other state or local body be prohibited.

**Defendant's Response:**

## 19. MOTION TO BAR ANY REFERENCE TO THE PLAINTIFF KNOWING EMMA BELL BERN and MARY FESENMAIER or ATTENDING MEETINGS OF THE ILLINOIS COALITION AGAINST TORTURE TOGETHER AT PLAINTIFF'S COUNSEL'S HOME

During his deposition, the Defendant's Counsel inquired if the Plaintiff knew Plaintiffs in two other pending cases, Emma Bell Bern and Mary Fesenmaier. Additionally, Defendants' counsel inquired about where they had met. They met in court during the pendency of their criminal cases.

Additionally, Plaintiff and Ms. Bell Bern have seen each other at meetings for the Illinois Coalition Against Torture, some of which were held at the home of Plaintiff's Counsel.

The fact that they know each other is irrelevant to any issue in this case. In addition to being irrelevant, it may also divert the jury from the real issues in the case, and is likely to be prejudicial.

**Defendants' Response:**

## 20.  MOTION TO BAR REFERENCES TO PRIOR ARRESTS OR CONVICTIONS OF THE PLAINTIFF

In the Plaintiff's youth, he was arrested in 1997 for a battery and in 2000 for possession of Marijuana.  In 2004 he was arrested for a DUI.  The outcome of those cases is unclear.  On October 23, 2012, he was arrested for an ordinance violation as part of an Occupy Chicago demonstration.  He did ten hours of community service for that ordinance violation.  Finally, on July 14, 2012, he was arrested for and received credit for time served for possession of marijuana. Additionally, the Plaintiff has received a variety of tickets for violations of Chicago Municipal Ordinances, including a ticket for skateboarding and for drinking beer at the lakefront.  He may owe some money for fines

for these violations.  None of this is relevant to any issue in this case.  In some instances, the alleged offenses were over ten years ago, and occurred when he was a juvenile.

Fed. R. Evid. 609 provides that misdemeanor convictions may be admitted only if the court determines that the probative value of admitting the evidence outweighs the prejudicial effect to the accused.  Further, Fed. R. Evid. 609(a)(1) prohibits the admission of evidence of convictions unless the convictions involve dishonesty or false statements. *Gust v. Jones,* 162 F. 3d 587, 595 (10th Cir. 1998). Plaintiff's conviction(s) do not involve dishonesty or false statements and thus should not be admitted. *Johnson v. Smith and Loughran,* (07-01562, Judge Hart, Dkt. 83, 5/20/10). The probative value does not outweigh the prejudice of admitting the conviction and arrests.

Although occurring within the last ten years, this court has the discretion to exclude the misdemeanors.  Fed. R. Evid. 609 and 403.  *United States v. Galati*, 230 F. 3d 254, 261-263 (7th Cir. 2000).  The court applies a balancing test to determine if the probative value of the admission of this misdemeanor is outweighed by the prejudicial impact of the jury's knowledge that the Plaintiff has a misdemeanor conviction for possession of marijuana and possibly a DUI.  A balancing test establishes that the prejudice to the Plaintiff from the jury's knowledge that the Plaintiff was convicted for possession of marijuana and possibly a DUI will be extremely and insurmountably prejudicial to the Plaintiff.  The Defendants may try to claim that Plaintiff participated in a civil disobedience action on May 19, 2012, and any reference to the Occupy Chicago arrest will be extremely prejudicial to the Plaintiff.

Additionally, the Plaintiff has been arrested before.  However, it is well established that arrests that do not lead to a conviction are excludable under Fed. R. Evid.

404(b). *Anderson v. Sternes*¸ 243 F. 3d 1049, 1054 (7th Cir. 2001). Examination concerning arrests that did not lead to convictions is beyond the scope of Fed. R. Evid. 609. Arrests are both irrelevant and highly prejudicial.

The potential for prejudice is high and arrests have little probative value since arrests without more does not impeach the integrity or credibility of a witness. *U.S. v. Wilson*, 244 F. 3d 1208 (10th Cir. 2001). If the jury were to hear that the Plaintiff had been arrested on numerous occasions it would be extremely prejudicial to the Plaintiff, yet add no relevant or probative evidence to this case. Moreover, in one essential way, the previous arrests differ from this arrest. Plaintiff did not allege that any of his prior arrests were false, as he does here. *Moore v. The City of Chicago*,2008 WL 4549137, April 15, 2008.

Plaintiff believes that the Defendants' goal in introducing evidence that the Plaintiff has been arrested, including at a public protest, may be to imply that since he has been arrested before at protests, then his arrest at this demonstration was part of a planned civil disobedience. However, the Defendants have absolutely no evidence that there was a planned (or unplanned) civil disobedience or a deliberate attempt to be arrested on the part of the Plaintiff on May 19, 2012.

Additionally, the Defendants may hope to convince a jury that the Plaintiff should be awarded less damages since he has been arrested before and thus has experienced the arrest process before. However, the Plaintiff will testify only as to the impact the specific conditions of his arrest and conditions of confinement had on him on May 19, 2012. To permit the Defendants to cross examine the Plaintiff regarding the specifics of his conditions of arrests and conditions of confinement in other arrests, under the guise of

determining damages, would be a back door maneuver to get in the fact that he has been arrested in other instances.

**Defendants' Response:**

## 21.  MOTION IN LIMINE TO PROHIBIT THE DEFENDANTS FROM REFERRING TO PREVIOUS ACTS OF MISCONDUCT OF THE PLAINTIFF

When the Plaintiff was in high school, he was disciplined for violating football team procedures and skipping class and was kicked off the football team. Additionally, he was disruptive in class.

None of these actions is at all relevant to any issue in this case and the Plaintiff requests that the Defendants be prohibited from questioning the Plaintiff regarding any discipline he received (merited or otherwise) in high school.

**Defendants' Response:**

## 22.  MOTION TO EXCLUDE REFERENCES TO PEOPLE WEARING MASKS

During the Plaintiff's deposition, he was asked about masks or face coverings. The Defendants may attempt to elicit testimony from the Plaintiff, Defendants or other witnesses regarding the use of face coverings by other demonstrators.  This is irrelevant to any issue in this case, yet it would be prejudicial to the Plaintiff since it could be used by the Defendants to paint an inaccurate portrayal of the demonstration. Nonetheless, and it is irrelevant to the facts leading to the Plaintiff's arrest.

Additionally, at the time, the Plaintiff wore a yellow bandana around his neck because of the heat.  The Defendants may try to assert that this bandana was covering the

Plaintiff's face.  There is absolutely no evidence of this and any testimony regarding the yellow bandana should be excluded.

**Defendants' Response:**


**23.  MOTION TO EXCLUDE REFERENCES TO RADICALS AGAINST DISCRIMINATION, CHITOWN PHILLY, AUTONOMOUS ANARCHIST COLLECTIVE, ANTIFA, ANTI-FASCIST, GOLDEN DAWN, ANTI-RACIST ACTION, and ALLEGED PHOTOGRAPHS OF PLAINTIFF**

During his deposition, the Plaintiff was asked about various names, formations, groups, and organizations, and shown photographs that the Defendants purported might to be the Plaintiff.  None of this is relevant evidence.  Since these names may be confusing to jurors, it will only serve to confuse the jury regarding the issues in this case. A review of the above names shows the prejudice that could ensue if any evidence or testimony about the above names was admitted into the trial.

Chitown Philly is a name used by the Plaintiff to communicate on the internet.  It is not relevant to any issue in this case.

Radicals Against Discrimination is not an organization but an "idea" as the Plaintiff testified.  It appears to be a web page to which the Plaintiff has posted comments.  He testified that he does not agree with their statement.  There is no reason to ask the Plaintiff any questions concerning this formation.

Autonomous Anarchist Collective, Antifa and Anti-Fascist apparently refer to opposition to the right wing organization in Greece, Golden Dawn.  It is an organization that is anti-immigrant and proposes a conservative response to Greece's economic

problems. Obviously, none of this has anything to do with the incident that occurred on May 19, 2012. Admitting evidence about any of the above names or references would only serve to confuse the issues in this case. The references have no relevance to any issue regarding false arrest, excessive force or malicious prosecution.

The Defendants' attorney also asked the Plaintiff about photographs of a person ~~who appears to~~they implied was ~~be~~the Plaintiff that w~~ere~~as taken at a demonstration against Golden Dawn. The person in the photograph, who may be the Plaintiff, was dressed in black. Apparently, the Defendants hope to portray the Plaintiff as someone who dresses in black. The fact is that a photograph of someone who may be the Plaintiff and who was dressed in black is irrelevant to any issue in this case and the events of May 19, 2012.

Similarly, the Defendants asked the Plaintiff is he was a member of an anti-racist organization, Anti-Racist Action and if a photograph of a person at an anti-racist action is the Plaintiff. The Plaintiff denied that he was or is a member of that organization or that the photograph was of him. Once again, the Defendants are attempting to obfuscate the real issues in this case by bringing up irrelevant but very ~~possibly~~ prejudicial issues.

The Plaintiff requests that none of the above references or photographs be admitted into evidence.


Submitted by:

Melinda Power and Julia L. Bartmes

On behalf of the Plaintiff

22